UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:11CR1 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANUM OPINION & |
| PATRICK JOHNSON, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is a motion to compel discovery (Doc. 23) and a motion for an order to issue a subpoena (Doc. 24) filed by defendant Patrick Johnson's ("defendant" or "Johnson"). The Government has filed a brief in opposition (Doc. 28) to defendant's motions, to which defendant has filed a reply (Doc. 29). This matter is ripe for disposition. For the reasons that follow, defendant's motions are **DENIED**.

I.   BACKGROUND

On January 4, 2011, a federal grand jury indicted defendant with one count of bank robbery in violation of 18 U.S.C. § 2113(a). Police investigating the robbery collected as evidence, among other items, a baseball cap worn by the perpetrator that was dropped when he fled the bank. Police delivered the baseball cap to the Ohio Bureau of Criminal Identification and Investigation ("BCI") office in Richfield, Ohio for DNA analysis. Per BCI policy, an analyst took two swabs from the hat for testing and returned the hat to police for storage.

A BCI forensic scientist, Russell Edelheit, then performed a DNA profile on the swabs taken from the hat. Edelheit obtained a partial profile, which he then ran through the Combined DNA Index System ("CODIS") for possible matches. After reviewing the returned "hits," he determined that there was only one hit, or CODIS profile, that could not be excluded as a potential match to the DNA on the hat. Each of the other CODIS hits/profiles were ruled out as potential matches. Upon Edelheit's request, the CODIS administrator provided him with the identifying information on the profile, which indicated that the profile belonged to Johnson.

Edelheit then asked local law enforcement to obtain a DNA sample from Johnson so that he could compare it to the DNA on the hat. Subsequently, Johnson provided the FBI with a fresh DNA sample, in the form of a buccal swab. Edelheit performed a comparison and confirmed that Johnson's DNA was a match to the DNA on the hat left at the robbery. He further calculated the expected frequency of occurrence of the partial DNA profile of the swab on the cap as 1 in 3,928,000 unrelated individuals.

Citing *Brady v. Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 16(a)(1)(E), defendant filed the instant motions (Docs. 23, 24), seeking access to information regarding other potential matches identified by Edelheit's comparison of the partial DNA profile collected from the hat with the CODIS database, identified by defendant as "Match Detail Reports."

## II.     STANDARD OF REVIEW

In *Brady,* the Supreme Court held that "a defendant's due process rights are violated where the government withholds evidence favorable to a defendant that is 'material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"

2

373 U.S. at 87. Subsequent Supreme Court precedent, including *Giglio v. United States,* 405 U.S. 150 (1972), determined that *Brady's* duty of disclosure encompasses not only exculpatory evidence but impeachment materials as well. *Giglio,* 405 U.S. at 154. Under the *Brady* rule, a defendant has the burden of demonstrating that the withheld evidence is exculpatory and material. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

Additionally, Federal Rule of Criminal Procedure 16(a)(1)(E) provides as follows:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> […]

Fed. R. Crim. P. 16(a)(1)(E).

"Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine the confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007). "Evidence that is 'merely cumulative' to evidence presented at trial is 'not material for purposes of *Brady* analysis.'" *Brooks v. Tenn.*, 626 F.3d 878, 893 (6th Cir. 2010). (quoting *Carter v. Mitchell*, 443 F.3d 517, 533 n. 7 (6th Cir. 2006)).

### III. ANALYSIS

Defendant argues that the "Match Detail Reports" produced by BCI during its initial comparison of the DNA from the baseball cap with the CODIS database for possible matches is evidence of other suspects connected to the bank robbery and is "favorable" and

material to his defense. (Doc. 29.) Defendant has retained an expert to analyze the Government's DNA evidence and asserts that his expert should be permitted to review the reports to determine whether Edelheit erred in excluding any of the potential matches. (Doc. 23.) According to Defendant's expert, these reports are "routinely provided" to criminal defendants and are discoverable in "jurisdictions across the county." (Doc. 29 at 2-3.)

The Government asserts in opposition to this motion that it has already provided all of the CODIS information that is relevant to Johnson's case, including Edelheit's reports from his comparison of Johnson's DNA to the DNA on the hat. The Government argues that Johnson is not entitled, however, to review the non-matching CODIS hits because this information is outside of the scope of Rule 16(a)(1)(E) and is not exculpatory or relevant to Johnson's defense.[1]

### A. The Scope of the Government's Possession, Custody, or Control Under Rule 16(a)(1)(E)

According to the Government, the requested information is within the care and custody of the FBI, and is therefore not within the prosecution's control for purposes of Rule 16(a)(1)(E). The Government is correct that neither Rule 16 nor *Brady* requires the government to discover information not in its possession or of which it was not aware. *See Owens v. Guida*, 549 F.3d 399, 415 (6th Cir. 2008) (quoting *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir. 1998)).

The disclosure requirements, however, apply not only to the information in the prosecutor's own files, but also to information held by "the law enforcement agency investigating the offense." *Id.* at 416 (citing *Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir.

---

[1] The Government also argues in opposition that the Federal DNA Act, 42 U.S.C. § 14132(b)(3), strictly limits the disclosure of CODIS information, and that Johnson should not be permitted to gain access to the highly personal and sensitive information stored in the database "as part of a discovery fishing expedition." (Doc. 28 at 12.) Because the Court has determined herein that this information is not discoverable under either *Brady* or Fed. R. Crim Pro. 16, it need not reach the issue of whether the statutes in question would prohibit this disclosure.

2002)); *Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009) ("*Brady* thus applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not […]"). At the request of local law enforcement, BCI accessed the CODIS database to develop suspects as part of the investigation and prosecution of this case, Indeed, the Government has stated that it intends to call Edelheit at trial, and that the defense is free to cross-examine him as to the method he used to eliminate other CODIS hits. Thus, the Court rejects the Government's contention that Johnson's request for information regarding other CODIS hits is outside the scope of its control for purposes of Rule 16(a)(1)(E).

### B. Materiality of CODIS "Match Detail Reports"

Next, the Government argues that the earlier CODIS hits are an investigatory technique used to find potential suspects, similar to calls to a police tip-line, and are not evidence that is relevant or material to Johnson's guilt or innocence. Specifically, the Government argues that evidence of other possible matches or suspects is not discoverable by Johnson unless he can demonstrate some "plausible nexus" linking the other suspects to the crime. Otherwise, the Government asserts whether or not other possible matches exist in the CODIS database is not relevant or material to Johnson's guilt or innocence. The Government's arguments are well taken.

"[T]the [CODIS] database search merely provides law enforcement with an investigative tool, not evidence of guilt." *People v. Johnson,* 139 Cal. App. 4th 1135, 1150 (5th App. Dist. 2006). In *Jackson v. Anderson,* 141 F. Supp. 2d 811 (N.D. Ohio 2001), the Court observed that:

> Though the prosecution is responsible for disclosing all favorable evidence known to them as well as those acting on their behalf, *see Kyles*, 514 U.S. at 437, 115 S.

> Ct. 1555, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois,* 408 U.S. 786, 795, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972) (Determining that the witness withheld by the prosecution was merely an early lead that the police abandoned when eyewitnesses were found). *See also Arizona v. Youngblood,* 488 U.S. at 55, 109 S. Ct. 333. *Brady* does not encompass information that "might be of use to the defendant in acquiring exculpatory or impeachment evidence that the defendant had thought was unavailable." *United States v. Mullins,* 22 F.3d 1365, 1372 (6th Cir. 1994). Moreover, the prosecution is responsible for providing only that which is favorable to the accused and necessary for him to receive a fair trial. *See Bagley,* 473 U.S. at 675, 105 S. Ct. 3375. As such, the prosecution is not required to disclose to the defense every potential suspect questioned by the police.

141 F. Supp. 2d at 831-33 (finding no violation of Brady when prosecution did not turn over investigatory leads, including fingerprint cards of other suspects, where in light of other evidence there was no reasonable probability that the result of the trial would have been different).

Johnson's motion merely speculates that the information disclosed may detect an error by the BCI analyst and may show evidence of "other possible suspects," but this does not transform this information into *Brady* material. He has presented no evidence that the eliminated profiles can otherwise be linked to the crime he is accused of committing. A mere possibility that the information sought might help the defense does not establish that this evidence is material. *See Kiley v. United States*, 260 F. Supp. 2d 248, 273 (D. Mass. 2003) (holding undisclosed information concerning alternate suspects is only material if there is some plausible nexus linking the other suspect to the crime) (citing *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)).

Furthermore, the fact that the DNA swab collected from the baseball cap may inculpate someone else in the database is not exculpatory or favorable to Johnson's defense:

> The strength of the evidence against him (at least in terms of the DNA evidence) depends upon the confirmatory match between *his* profile and that of the

6

> perpetrator, and the calculation of the frequency of the *perpetrator's* profile in the relevant population. That population is the population of possible perpetrators, not the population of convicted offenders whose [sic] DNA has been entered into CODIS. The fact [defendant] was first identified as a possible suspect based on a database search simply does not matter.

*Johnson,* 139 Cal. App. 4th at 1151. In other words, whether or not the analyst erred at the investigatory stage of his DNA analysis has no bearing on the strength of the DNA evidence against Johnson consisting of the direct comparison of his DNA with the DNA extracted from the hat. *See Nock v. Roden,* No. 10-10158, 2011 U.S. Dist. LEXIS 16632, at * 33-34 (D. Mass. January 31, 2011) (holding employee proficiency testing and laboratory audits related to CODIS database operation not exculpatory or material where substantial evidence used to establish defendant as perpetrator not based on CODIS match but on direct comparison of his DNA with crime scene specimen; CODIS match relevant to explain how investigation came to focus on defendant, but not to establish that he committed the charged crime); *see also, People v. Days*, 915 N.Y.S.2d 852, 857 (Co. Ct. 2011) (denying defendant's request for CODIS reports regarding hits deemed non-matches by analyst because information sought did not directly bear "on the issue of the defendant's guilt or innocence").

The evidence that is material to the guilt or innocence of Johnson is the testing that followed the CODIS search, which directly compared a fresh swab of the Johnson's DNA with DNA profile collected at the crime scene. Indeed, it is only this evidence that the Government intends to present at trial. There is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore*, 408 U.S. at 795 (1972). The Government has already provided Johnson with the hat and the results of Edelheit's comparison of Johnson's DNA with that of the sample

obtained from the baseball cap– nothing compels it also to provide its preliminary search of the CODIS database for possible matches, which is investigatory in nature and is not exculpatory or material to Johnson's defense. *See Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir. 2004) (holding no duty to disclose underlying test documents consistent with non-exculpatory crime lab report that was produced for defense).

### IV. CONCLUSION

For all of the foregoing reasons, plaintiff's motion to compel discovery (Doc. 23) and his motion for an order to issue a subpoena (Doc. 24) are **DENIED**.

**IT IS SO ORDERED**.

Dated: October 7, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**