UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:11CR1 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANUM OPINION & |
| PATRICK JOHNSON, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

Before the Court is a notice of intent to introduce evidence pursuant to Rule 404(b) of the Federal Rules of Evidence filed by plaintiff United States of America ("plaintiff" or the "Government"). (Doc. 38.) Defendant Patrick Johnson ("defendant" or "Johnson") has filed a brief in opposition to the Government's use of 404(b) evidence and/or a motion *in limine* seeking the exclusion of this evidence at trial. (Doc. 43.) The Government has filed a reply. (Doc. 44.) This matter is ripe for disposition. For the reasons set forth below, the Court will permit the Government to present the proposed evidence and **DENIES** defendant's motion *in limine*.

I.  BACKGROUND

Defendant is charged with robbing a Dollar Bank located in Lakewood, Ohio on March 25, 2008. During the robbery, the bank robber, acting alone and wearing a blue baseball cap, shoved a bank customer out of the way, jumped onto the teller counter, grabbed money from the teller drawer, shoved the cash into a blue plastic grocery bag he was carrying, and fled through the back door of the bank. The bank robber did not brandish weapon, however, after the robbery, police found a knife on the floor area near the teller window.

The bank's surveillance cameras captured the actions of the robbery suspect; however, the Government has stated that identification of the suspect using the video or eyewitness testimony is not possible because the suspect covered his face with a mask and the aforementioned baseball cap. The Government contends that, nonetheless, the video and witness testimony will establish that the bank robber's physical characteristics are consistent to that of defendant. Additionally, DNA obtained from a blue baseball cap resembling the one worn by the suspect, which police recovered from a parking lot near the bank, matches defendant's DNA profile maintained in the Government's CODIS database.

The Government anticipates that at trial, the defense will argue that defendant did not commit the robbery in question, and that the DNA evidence alone is not sufficient to establish his guilt beyond a reasonable doubt. Thus, the Government filed a notice of intent to submit evidence of six other robberies that defendant committed in 1994, which it asserts are relevant to the issue of identity.[1] The Government seeks to present the following facts related to those six prior robberies:

(1) On May 18, 1994, defendant robbed a Dollar Bank in Strongsville, Ohio. During the robbery, defendant wore a yellow baseball cap, jumped over the teller counter, stole cash from the open teller's drawer, and put the stolen money into a blue plastic grocery bag that he was carrying;

(2) On May 27, 1994, defendant robbed the same Dollar Bank in Strongsville, Ohio. During the robbery, defendant wore a yellow baseball hat, jumped over the teller counter, asked the tellers to open their drawers, stole money from a teller's drawer, and put the money into a blue plastic bag he was carrying;

(3) On June 14, 1994, defendant robbed a First Federal of Lakewood branch in Westlake, Ohio. During the robbery, defendant wore a red baseball cap,

---

[1] Defendant was convicted of committing the 1994 robberies following the entry of a guilty plea. The Government has indicated that it does not intend to introduce the defendant's prior convictions, but only the facts admitted to by defendant.

    jumped over the teller counter, took money from the teller drawers, and put the stolen money into a white plastic bag he was carrying. Witnesses also observed a brown handle of a knife protruding from defendant's back pocket;

 (4) On June 27, 1994, defendant robbed a Charter One Bank in Rocky River, Ohio. During the robbery, defendant wore a blue baseball hat with a white logo, jumped over a teller window, pushed a teller out of the way, took money from the teller's drawer, and put the money into a "Finast" grocery bag;

 (5) On July 6, 1994, defendant robbed a Bank One in Eastlake, Ohio. During the robbery, defendant wore a baseball cap, jumped over a teller window, pushed the teller out of the way, attempted to open several teller drawers, took money from a drawer he was able to open, and put the money into a plastic bag he was carrying;  and

 (6) On July 19, 1994, defendant robbed a Home Federal Savings and Loan in Lakewood, Ohio. During the robbery, defendant wore a New York Giants baseball cap, vaulted over the teller counter, shoved a teller out of the way, took money from two teller drawers, and put the money into a blue plastic grocery bag he was carrying.

  The Government contends this evidence will establish that defendant's *modus operandi* and identifiable acts in his past robberies are distinctive and directly probative of defendant's identity in this case, and that it was not just a coincidence that defendant's DNA was found on the baseball hat recovered at the scene. The Government also argues that jumping the teller counter is a unique method for bank robberies, has only occurred in 7% of all bank robberies in the past five years, and is sufficient by itself to constitute a distinctive *modus operandi*.

  Defendant argues in opposition that the Government cannot carry its burden of proving his prior robbery convictions are similar to the degree necessary to constitute a "signature" *modus operandi* and should be excluded. Additionally, defendant contends that the robberies are not reasonably "near in time" to the instant offense to be admissible. Finally, defendant argues that the probative value of the past robberies is substantially outweighed by the

3

risk of unfair prejudice to defendant and if admitted, there is a clear and present danger that the jury would misuse the evidence and convict him for crimes other than the one charged.

**II.     DISCUSSION**

Rule 404(b) of the Federal Rules of Evidence states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause show, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

Prior to admitting Rule 404(b) evidence, the district court must: (1) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred; (2) determine whether the evidence is admissible for one of the proper purposes outlined in Rule 404(b); and (3) apply Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied in Rule 403. *United States v. Allen,* 619 F.3d 518, 523 (6th Cir. 2010) (citing *United States v. Mack,* 258 F.3d 548, 553 (6th Cir. 2001). *See United States v. Trujillo,* 376 F.3d 593, 605 (6th Cir. 2004) (quoting *United States v. Jenkins,* 345 F.3d 928, 937 (6th Cir. 2003); *United States v. Merriweather,* 78 F.3d 1070, 1074 (6th Cir. 1996)). Defendant, who pled guilty to the previous six robberies, does not dispute the first step of the Rule 404(b) inquiry, *i.e.,* that the previous six robberies occurred; accordingly, only the second and third steps are at issue.

### A. Rule 404(b) Proper Purpose Inquiry

Under the second step of the Rule 404(b) inquiry, the Court must determine whether the evidence is offered for a legitimate purpose, and not "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

> Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered.

*Jenkins,* 345 F.3d at 937 (quoting *United States v. Haywood,* 280 F.3d 715, 720 (6th Cir. 2002)). *See United States v. Rayborn,* 495 F.3d 328, 342 (6th Cir. 2007). The government represents that it intends to offer evidence of defendant's six prior bank robberies that were committed in same manner as the robbery charged here for the limited purpose of proving the identity of the bank robber in this case.

Indeed, when the only issue is that of the identity of the perpetrator, such as the case here, the introduction of evidence demonstrating a signature method or *modus operandi* is material to that issue and is a legitimate purpose under Rule 404(b). *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) ("[W]hen the issue is one related solely to identity, this Court has overwhelmingly approved of the admission of "other acts" evidence.") (citing *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993)).[2] To be admissible for this purpose, however, the prior acts or crimes must be near in time to, and "of sufficient distinctive similarity" to, the

---

[2] In *Fountain*, the Sixth Circuit held that,

> When identity is in issue, the trial court may admit evidence that the defendant previously committed a different crime using the same or similar *modus operandi* as was employed in the commission of the crime charged to show that the same actor committed both crimes, and thus to prove the identity of the perpetrator of the crime charged.

2 F.3d at 668.

5

offense charged in the indictment to "create a pattern or *modus operandi*." *Perry,* 438 F.3d at 648; *see also Mack,* 258 F.3d at 554 (noting that "standard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature' "); *United States v. Ismail*, 756 F.2d 1253, 1259 (6th Cir. 1985) (noting that prior acts or crime must be near in time to charged offense). It is not necessary, however, that the crimes be identical in every detail." *United States v. Hamilton*, 684 F.2d 380, 386 (6th Cir. 1982).

Defendant argues that the six prior robberies are not sufficiently similar to charged robbery in this case. Chiefly, he points out that the robber in this case did not vault over and walk behind the teller counter, as he did in the six prior robberies, but merely perched on top of the teller counter and reached over it to steal the money from the teller drawer. Moreover, he argues that none of the shared similarities, including jumping onto or over a teller counter, is unique enough to constitute a 'signature' and in fact, actually occur in countless bank robberies.

As outlined above, however "[i]t is not necessary […] that the crimes be identical in every detail." *Hamilton*, 684 F.2d at 385. All that is required is that the crimes share a sufficiently distinctive similarity to create a pattern or *modus operandi*. *Woods*, 613 F.2d at 635. Moreover, "standard conduct, although, not particularly unusual by itself, may, in combination, present an unusual and distinctive patter constituting a 'signature.' " *Mack*, 258 F.3d at 554 (finding that the use of a ski mask with a hooded sweatshirt and the method of "burst[ing] into the bank and "leap[ing]" over the teller counter constituted a signature); *see also*, *Woods*, 613 F.2d at 635 (finding that "armed robbery by robbers wearing ski masks, goggles, and jumpsuits and using a stolen vehicle for a getaway car" constituted a signature); *United States v. Miller*, 787 F.2d 593, 1986 WL 16725, at *1-2 (6th Cir. 1986) (finding that armed robbery by man

6

wearing a "business suit," who "waited in line like an ordinary customer and pretended to be carrying on bank business by presenting the teller with a check or money order," and who showed or threatened use of a handgun and demanded $50 and $100 bills, constituted a signature); *United States v. Eubanks*, No.3:06CR105, 2009 WL 3171993, at *5 (W.D. Ky. Sept. 29, 2009) (finding evidence of a 'signature' included wearing a baseball cap, fake mustache, and glasses, using a handgun, jumping onto and over the teller counter, using identical verbal commands, and carrying money away in a plastic bag).

Despite the distinction highlighted by defendant, the Court concludes, in light of the case law summarized above, that the circumstances outlined by the Government here are essentially identical and sufficiently unique, in combination, to create a "signature." Here, in each of the six prior robberies: (1) defendant entered the bank alone; (2) without a gun; (3) wearing a baseball cap; (4) jumped over the teller counter or window; (5) collected the money directly from an open teller drawer or one that was opened on his demand; and (6) placed the stolen money into a plastic grocery bag that he was carrying. Similarly, in the instant case, the bank robber entered the bank alone, without a gun, while wearing a baseball cap, jumped onto the teller counter, stole money directly from the teller drawer, and placed the stolen money into a plastic grocery bag that he was carrying. Though each element individually may not be particularly unique in bank robberies, when defendant's actions in the prior robberies are combined, they are unique enough to tend to prove his identity.

Defendant also argues that the prior bank robberies, having occurred fourteen (14) years prior to the charged robbery, are not reasonably near in time to the charged offense, and therefore, should not be admitted. The Government concedes that considerable time has elapsed

between the previous six prior robberies and the charged robbery, but argues that the time elapsed is of little consequence when determining whether the Court should admit this evidence in light of defendant's lengthy incarceration. According to the Government, when one subtracts the length of time between 1994 and 2008 that defendant was in prison as reported in the pretrial services report, the true time period at issue is shortened to less than five years.[3]

The Sixth Circuit has stated that the "prior conduct must be reasonably near in time under the facts of the particular case." *Ismail,* 756 F.2d at 1260. However, the Court has held that there is "no absolute maximum number of years that may separate a prior act and the offense charged." *Id.*; *see also, United States v. Love*, 254 F. App'x 511 (6th Cir. 2007) (determining that an eight-year-old conviction is not too remote to be admitted to prove intent to commit a later offense); *United States v. Persinger*, 83 F. App'x 55, 59 (6th Cir. 2003) (same). In this case, upon consideration of defendant's incarceration during much of the time between the 1994 robberies and the 2008 robbery, the Court concludes that the time that has elapsed does not eliminate the former's value as evidence of identity in this case. *See United States v. Finnell*, 276 F. App'x 450, 455 (6th Cir. 2008) (upholding trial court's determination that 1999 conviction was not too remote in time to 2006 arrest where defendant was imprisoned for a majority of that time). Accordingly, the Court concludes that the 1994 robberies are reasonably near in time under the facts of this particular case, and are "of sufficient distinctive similarity" to, the offense charged in the indictment to "create a pattern or *modus operandi*." As a result, the evidence is

---

[3] Based on this Court's review of the Pretrial Services Report, Johnson was incarcerated or on supervised release for a substantial amount of time between 1994 and 2008. For instance, on January 23, 1995, Johnson was sentenced to 84 months in prison followed by 3 years of supervised release; on December 16, 2003, he was sentenced to 18 months in jail; and on May 4, 2007, he received a suspended sentence of 180 days in jail and one year of probation.

8

admissible for a proper purpose pursuant to Rule 404(b), and defendant's motion *in limine* is **DENIED**.

### B. Rule 403 Balancing

The final prong of the three-part Rule 404(b) inquiry requires an analysis under Rule 403, which reads in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury [...]." Fed. R. Evid. 403. "Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." *Cooley v. Carmike Cinemas,* 25 F.3d 1325, 1330 (6th Cir. 1994). A district court has broad discretion in determining whether the danger of undue prejudice outweighs the probative value of evidence. *United States v. Vance,* 871 F.2d 572, 576 (6th Cir. 1989).

"An important indication of probative value of evidence is the prosecution's need for the evidence in proving its case." *Vance,* 871 F.2d at 577 (citing *United States v. Benton,* 637 F.2d 1052, 1057 (5th Cir. 1981)). In this case, defendant is expected to defend that it was only a matter of coincidence that a hat with DNA matching his was found near the bank and that no other evidence places him in or near the bank on the day of the robbery. Consequently, the evidence regarding the manner in which defendant committed the prior bank robberies is material and highly probative to the issue of his identity as the bank robber in this case.

As for unfair prejudice to the defendant, the Court observes that "[u]nfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on

an improper basis.' " *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir. 1993) (quoting *United States v. Schrock,* 855 F.2d 327, 333 (6th Cir. 1988)). Evidence is unfairly prejudicial if:

> the jury's decision will be based upon improper factors, notably the character and past conduct of the accused, rather than upon the evidence presented on the crime charged. The prejudicial effect of the evidence may be reduced by the manner in which the evidence is introduced, e.g., elimination of inflammatory or unnecessary details from the presentation, and by cautionary instructions from the trial judge.

*Benton,* 637 F.2d at 1057.

Here, there is some concern that the introduction of evidence regarding defendant's prior bank robberies will cause the jury to convict on the improper basis; namely, that "he did it before, so he probably did it again." Still, a limiting instruction can be given to restrict the jury's consideration of this evidence for the sole purpose of determining whether there are any similarities between the 1994 robberies and the robbery charged in the indictment, thereby suggesting that the same person committed all of the robberies. *See Mack*, 258 F.3d at 555. Moreover, the Government has indicated that it does not intent to present evidence of defendant's prior convictions to the jury—only of his admission to the underlying conduct—thereby, minimizing the risk that the jury will convict on an improper basis.

The Court finds that, on balance, the probative value of this evidence to establish identity substantially outweighs the possible prejudice to defendant. Therefore, its admission is permissible under Rule 403, and defendant's motion in limine to exclude this evidence is **DENIED**.

## III. CONCLUSION

For all the foregoing reasons, the Court **DENIES** defendant's motion *in limine*.

**IT IS SO ORDERED**.

Dated: November 15, 2011

                                                  **HONORABLE SARA LIOI**
                                                  **UNITED STATES DISTRICT JUDGE**